
EOD
11/15/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DOROTHY LOUISE SANFORD, | § | Case No. 05-45484 |
| | § | (Chapter 13) |
| Debtor. | § | |

**MEMORANDUM OPINION REGARDING OBJECTION TO CLAIM OF**
**SUNWEST MORTGAGE COMPANY, INC. (CLAIM #2)**

This Court has heard and considered the "Amended Objection to Claim 2 of Sun West Mortgage Co Inc" filed by the Debtor, Dorothy Louise Sanford, and the response and objection thereto filed by Sunwest Mortgage Company, Inc. (the "Claimant"). Upon the conclusion of the hearing on October 19, 2006, the Court scheduled the matter for a later ruling. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law.[2]

## BACKGROUND

The Debtor became indebted to the Claimant pursuant to a Note and Deed of Trust executed by the Debtor on April 15, 1997. The indebtedness was secured by a mortgage on the debtor's home located at 2818 Etta Drive in Dallas, Texas (the "Property").

At some point in 2001, there was a water leak at the Property and mold was discovered under the house. The Debtor hired an attorney, Douglas Brooks, who

---

[2] This Court has jurisdiction to consider the Debtors' objection pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

represented the Debtor in prosecuting a claim against Farmer's Insurance for mold and other damages. The Debtor reached a settlement with Farmer's Insurance in the amount of approximately $50,000.

As a result of the damage to her home and in anticipation of making repairs, the Debtor moved into an apartment in February 2004. In June 2004, the Debtor received a check for $49,608.34 from Farmer's Insurance. The check was paid to the order of the Debtor and the Claimant. After endorsing the check, the Debtor forwarded it to the Claimant.

The Debtor selected Burgess & Alexander/DHL Construction Co. & USA Mold Remediation ("USA Mold") to repair her home. USA Mold began demolishing the portions of the interior of the home that had been damaged by water and mold. These areas included the bathrooms and the kitchen.

On June 7, 2004, the Claimant sent a check in the amount of $16,000.78 to the Debtor. The Debtor endorsed the check and paid it to her contractor on or about June 7, 2004. On June 28, 2004, the contractor sent a notice to the Claimant stating that the contractor had completed the demolition work on the Property.

USA Mold's payment schedule provided that USA Mold would be paid an additional $15,000 for rebuilding the demolished areas in the Debtor's home. Accordingly, on June 22, 2004, the Claimant sent a check in the amount of $15,000 to the Debtor. The Debtor did not provide the Court with a clear explanation of how she cashed this check, which was made payable to both the

Debtor and USA Mold. It is undisputed, however, that the Debtor used the entire $15,000 to pay bills and various personal expenses.

In a letter dated July 12, 2004, a company hired by USA Mold informed the Debtor that it had tested the air in her home and found that the mold had been remediated. USA Mold demanded an additional $13,753 from the Debtor, which (according to the contractor's payment schedule) was the balance owed for remediation of the mold in the Debtor's home following a final air clearance test. The contractor refused to do any more work without an additional payment from the Debtor.

According to USA Mold, the Debtor owes $13,753 for the work performed on her Property. In a letter to the Claimant, USA Mold requested that the Claimant send payment to it for the outstanding balance. The Debtor disputes the quality of the work performed by USA Mold and asserts that she owes no further payments to USA Mold.

On May 5, 2005, the Debtor's attorney, Mr. Brooks, sent a letter to the Claimant demanding that the Claimant release the remainder of the insurance settlement funds to the Debtor. The Claimant and the Debtor subsequently reached an agreement regarding the release of the funds set forth in an exchange of letters dated June 15, 2005 and June 27, 2005. In particular, the Claimant agreed to release all insurance proceeds with a check payable to "Douglas J. Brooks Client Trust Account." However, in a letter dated August 16, 2005, the Claimant

informed the Debtor that HUD (as the insurer of the loan secured by the Debtor's home) refused to authorize the release of the insurance proceeds to the Debtor.

Turning to the payment history on the Note, the Debtor made irregular and late payments to the Claimant during 2004 and 2005. In March 2005, the Claimant received two payments from the Debtor and applied the payments to the amounts due for December 2004 and January 2005, reducing the principal amount of the loan to $61,667.52. The Debtor has not made any further payment to the Claimant.

The Claimant sent a notice of default and intent to accelerate the Note to the Debtor in July 2005. In the notice, the Claimant informed the Debtor of the amount necessary to cure the payment default. The Claimant further stated that, if the Debtor failed to pay that amount by August 15, 2005, the Claimant would accelerate the maturity of the Note and declare all sums due and payable.

On September 22, 2005, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Claimant had not yet foreclosed on its interest in the Debtor's home, which became property of the Debtor's bankruptcy estate upon the filing of the bankruptcy petition. The Claimant thereafter filed its Claim #2 in the amount of $66,397.72. The Claimant listed its claim as secured, but described the value of the Property as "unknown."

The Debtor subsequently filed an objection to the allowance of the Claim #2 as filed. The Debtor asserts in her objection that: (1) the Claimant failed to credit the Debtor for the insurance proceeds it is holding; (2) the Debtor's

4

expenses for duplicate housing and housing-related expenses should be set off against the loan; (3) the Debtor should receive an additional setoff for the continued deterioration of her home pending repair; and (4) the amount of Claim #2 relating to a pre-petition arrearage (*i.e.*, $7,961.38) is insufficiently documented. Thus, the sole issue presented to the Court relates to the amount of the Claimant's claim.[1]

## DISCUSSION

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects. *See* 11 U.S.C. §502(a); FED. R. BANKR. P. 3001(f). A proof of claim, however, does not qualify for that *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules. *See First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989). Bankruptcy Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

---

[1] Following the hearing, the Debtor filed a brief in support of her objection in which she asserted a new legal theory. In her post-hearing brief, the Debtor argued that the Court should require the Claimant to turnover the insurance proceeds pursuant to 11 U.S.C. §543. The Debtor, however, failed to timely present this theory to the Court. Moreover, the Debtor failed to present any evidence that the Claimant is a "custodian" within the meaning of 11 U.S.C. §§ 101(11) and 543.

FED. R. BANKR. P. 3001(c).  Likewise, if a creditor claims a security interest in property of the debtor, Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Bankruptcy Rule 3001 by alleging facts in the proof of claim that are sufficient to support the claim.  If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000).  This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990); or by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy*, 112 B.R. at 300.  If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.  *See In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

In this case, since the Claimant filed a claim in compliance with the Federal Rules of Bankruptcy Procedure, including the attachment of a copy of the agreement upon which its claim is based, the claim is entitled to *prima facie* validity. To rebut that effect, the Debtor alleged that the Claimant should have applied the insurance proceeds to her loan and, somewhat inconsistently, that the Claimant should have released the insurance proceeds to her so that she could repair her home. The evidence submitted by the Debtor at the hearing regarding the Claimant's retention of the insurance proceeds was sufficient to bring the legitimacy of the claim amount into question and to overcome the *prima facie* validity of such claim. Thus, it becomes incumbent upon the Claimant to establish the amount of its claim by a preponderance of the evidence.

The heart of the parties' dispute at the hearing on the Debtor's objection was whether or when the Claimant should be required to credit the remaining insurance proceeds against the balance owed by the Debtor. The Debtor argued that the insurance proceeds should be treated as a pre-payment of her required monthly loan payments and that her pre-petition arrears and late charges should be reduced or eliminated. The Claimant argued that the Deed of Trust allows it to retain the insurance proceeds indefinitely -- until the Debtor hires a contractor to complete the repairs to the Property.

The Deed of Trust addresses fire, flood and other hazard insurance and the obligations of the parties in the event of a loss. In particular, paragraph 4 provides (in pertinent part) as follows:

> In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, **at its option**, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, **or** (b) to the restoration or repair of the damaged Property. **Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments** ….

(Emphasis added.) Paragraph 4 does not require the Claimant to make its election regarding the insurance proceeds by any particular date.

Paragraph 14 of the Deed of Trust provides that it is governed by the law of the jurisdiction in which the Property is located – *i.e.*, Texas. In Texas, when a contract is silent regarding the date for an action to be taken, the courts will construe the contract as requiring such action be taken within a reasonable time. *See, e.g., Hewlett-Packard Co. v. Benchmark Elecs., Inc.,* 142 S.W.3d 554, 563 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (stating that where contract is silent regarding the date for an action to be taken, courts will construe the contract as requiring such action be taken within a reasonable time); *Price v. Horace Mann Life Ins. Co.,* 590 S.W.2d 644, 646 (Tex. Civ. App.-Amarillo 1979, no writ) (concluding contract silent regarding time within which insurer might require application for reinstatement and inferring parties intended a reasonable time); *see also Maxwell v. Lake,* 674 S.W.2d 795, 802-03 (Tex. App.-Dallas 1984, no writ) (concluding contract silent on method of exercising option and therefore inferring

8

option could be exercised by giving notice within option period and tendering performance within a reasonable time thereafter). The question of reasonableness is usually one for the trier of fact. *See Hewlett-Packard Co. v. Benchmark Elecs., Inc.,* 142 S.W.3d at 563 (citing *HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 634 (Tex. App. -- Austin 1992, writ denied)).

Here, the Claimant knew by August 16, 2005, that HUD would not allow it to release the insurance proceeds to the Debtor for repairs to her home. The Claimant should have applied the insurance proceeds to the Debtor's loan within a reasonable time after that date, but failed to do so. The Court finds that, under the facts of this case, the Claimant should have waited no more than thirty days (or one payment cycle) before applying the insurance proceeds it was holding to the Claimant's indebtedness under the Note.

With respect to the late charges of $278.16 included in the proof of claim, the Debtor argues that these charges should be disallowed because the Claimant failed to attach a loan history from the inception of the loan to the present date. It is not necessary, however, for the Court to review the entire loan history in order to determine whether the Claimant properly assessed the claimed late charges. The payment history for 2004 and 2005 – which was attached to the proof of claim and submitted at the hearing on the Debtor's objection – shows that fifteen late charges were assessed between January 2004 and the petition date. With respect to the amount of each charge, Paragraph 6 of the Note allows the Claimant to collect a late charge in the amount of 4% of the amount of each overdue payment.

With respect to the attorney's fees of $754.22 included in the proof of claim, Paragraph 18 of the Deed of Trust allows the Claimant to collect its reasonable attorney's fees. The payment history submitted by the Claimant reveals that the requested fees were incurred pre-petition. In her objection, however, the Debtor disputed that these fees were reasonable or necessary. The Claimant failed to present evidence establishing the reasonableness of the requested attorney's fees and, therefore, the Debtor's objection will be sustained as to the Claimant's pre-petition attorney fees.

For the foregoing reasons, the Court finds that Claim #2 should be reduced by $754.22 to $66,633. The $22,870.83 in insurance funds currently held by the Claimant should then be applied to the claim in the manner required by Paragraphs 3 and 4 of the Deed of Trust. After taking into account these reductions and credits, the Court finds that Claim #2 should be allowed as a secured claim in the amount of $42,772.17.

Finally, the Court addresses the Debtor's request for an equitable setoff against the Claimant's claim for alleged deterioration to her home and for her housing-related expenses since February 2004. Since the Debtor has asked for equity, the Court reminds that Debtor that those who come to equity must come with clean hands, and those who seek equity must do equity. In this case, the Debtor requested a release of a portion of the insurance proceeds to repair her home. The Claimant released the insurance proceeds to the Debtor to pay USA

Mold according to the contractor's payment schedule.  The Debtor, however, took a portion of the money and converted it to other uses.  Under the circumstances, it would be inequitable for the Court to charge the Claimant for the Debtor's failure to complete the repairs to her home.

## CONCLUSION

For the foregoing reasons, the Court finds that the Claimant has established, by a preponderance of the evidence, that Claim #2 should be allowed as a secured claim in the amount of $42,772.17 as of the petition date. All other relief requested by any party is denied.  Nothing in the Court's ruling today shall limit any right of USA Mold to make a claim against the Debtor for any balance allegedly due from the Debtor, nor shall the Court's ruling today limit any right of the Debtor to make a claim against USA Mold for allegedly inferior work.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law[2] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.  A separate order will be entered which is consistent with this Memorandum Opinion.

Signed on 11/15/2006

*Brenda T. Rhoades* MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[2] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.